IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| ADAPT PROGRAMS, LLC, and ADAPT FOUNDATION, INC. d/b/a BRAZOS PLACE, | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. _____ |
| VERITABLE BILLING SERVICES, LLC and OPTIMAL BEHAVIORAL HEALTH BILLING SOLUTIONS, LLC, | § § § § § | Jury Trial Demanded |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiffs ADAPT Programs, LLC and ADAPT Foundation, Inc. d/b/a Brazos Place ("Plaintiffs") file this Original Complaint against Veritable Billing Services, LLC and Optimal Behavioral Health Billing Solutions, LLC and, in support hereof, respectfully will show the Court the following:

### PARTIES

1. Plaintiff, ADAPT Programs, LLC ("ADAPT"), is a Texas limited liability company with its principal place of business in Houston, Harris County, Texas.

2. Plaintiff, ADAPT Foundation, Inc. ("Foundation" and, together with ADAPT, "Plaintiffs") is a Texas nonprofit corporation with its principal place of business in Houston, Harris County, Texas.

3. Defendant, Veritable Billing Services, LLC ("Veritable"), is a Texas limited liability company with its principal place of business at 2240 Woolbright Road, Ste. 349, Boynton

Beach, Florida 33426. It may be served with process by serving its registered agent, The Grady Law Firm, P.C., at 801 Congress, Suite 250, Houston, Texas 77002.

4. Defendant, Optimal Behavioral Health Billing Solutions, LLC ("Optimal"), is a Florida limited liability company with its principal place of business at 1680 Michigan Ave, PH. 4, Miami Beach, Florida 33139. It may be served with process by serving its registered agent, Julie W. Allison, at 4601 Sheridan Street #213, Hollywood, Florida 33021.

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. § 1332(a), the United States District Court for the Southern District of Florida has jurisdiction over this matter because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Pursuant to 28 U.S.C. § 1391(b)(3), venue is proper in the Southern District of Florida because a substantial part of the events or omissions giving rise to the claim occurred within this District.

7. On or about February 1, 2017, ADAPT and Veritable entered into a Standard Services Agreement (the "SSA") pursuant to which Veritable agreed to provide specified billing and credentialing-related services to ADAPT. The SSA contains a provision specifying that Florida law is the applicable law and venue for any litigation arising from the SSA will be exclusively in Palm Beach County Florida and/or the federal court whose jurisdiction includes Palm Beach County, Florida.

8. On or about January 1, 2019, Optimal, Veritable, and ADAPT executed an amendment, assignment, and agreement (the "Amendment") pursuant to which Optimal replaced Veritable as the provider of those services. The Amendment contains a provision specifying that Florida law is the applicable law and venue for any litigation arising from the SSA will be

exclusively in Miami Dade County Florida and/or the federal court whose jurisdiction includes Miami Dade County, Florida.

9. The claims Plaintiffs assert in this litigation arise from or are related to Veritable's and/or Optimal's non-performance and malfeasance in connection with the SSA and the Amendment.

**FACTS**

10. Plaintiffs are Texas entities that own and operate facilities for the provision of therapy and rehabilitation services to individuals struggling with substance abuse. In connection with Plaintiffs' business, they must routinely deal with health insurance providers, Medicaid, and/or other third-party payers for the services Plaintiffs provide their clients. Accordingly, ADAPT contacted Veritable, a medical billing company that provides health care providers such as ADAPT various services related to the proper preparation and submission of claims to insurers and other third-party payers, as well as collection of payment from those entities. Veritable held itself out as a capable medical billing company ready, willing, and able to provide the support Plaintiffs needed with respect to third-party payers.

11. On or about February 1, 2017, ADAPT and Veritable entered into the SSA. Almost contemporaneously, Veritable, ADAPT, and Foundation agreed that Veritable would provide services to Foundations pursuant to the terms of SSA. Thereafter, Veritable provided the same services to Foundation as it did to ADAPT – regrettably, to the same result. A copy of the SSA is attached as Exhibit "A".

12. Per the SSA's terms, Veritable undertook responsibilities, including: (1) providing "set up" services to verify that Plaintiffs had sufficient processes in place required for the provision of services to their clients; (2) pre-certification and pre-authorization services required by

Medicaid, Tri-Care, insurance companies, and/or other third party payers to obtain clinical authorization for medical necessity and claims payment ("utilization review services"); (3) obtaining information regarding available coverage for patient services provided by Plaintiffs to their clients ("benefit verification/insurance eligibility services"); (4) case managing and acquiring continued authorization during the client's treatment; (5) properly preparing and submitting claims for all patient services rendered by Plaintiffs ("claim submissions"); and (6) following up with respect to denied claims, appealing, and pursuing approval and payment.

13. Initially, Veritable's compensation for the services provided under the SSA was to be (a) six percent (6%) of all payments collected by Plaintiffs from insurers; (b) four percent (4%) of all payments collected by Plaintiffs from patients; (c) $25.00 for each benefit verification/insurance eligibility request completed during normal business hours; and (d) $40.00 for each benefit verification/insurance eligibility request completed during non-normal business hours.

14. The SSA contains a "Limitation of Liability" provision. That provision states that, in the event unspecified errors occur despite Veritable's "best efforts," Veritable's sole obligation to Plaintiffs is to correct the error.[1] Otherwise, the SSA purports to absolve Veritable of liability for special, consequential, incidental, punitive damages, or lost profits. The SSA also contains a laundry list of circumstances in which the SSA purports to "unconditionally hold harmless and indemnify" Veritable. Carla Bridges signed the SSA on behalf of Veritable, and Ryan Bailey signed on behalf of ADAPT. Not later than March 2017, Angela Opalak (CEO of Veritable) and

---

[1] In this regard, Veritable's representations and assurances regarding its knowledge, capabilities, and practices concerning medical billing were made to and did induce Plaintiffs into the SSA and into agreeing with the "Limitation of Liability" provisions in the SSA. Subsequently, it became clear that one or more of those representations and assurances were false or misleading when made, to Plaintiffs' detriment.

Joseph Gardzina (CEO of ADAPT and Foundations) agreed that Veritable would provide services to Foundation pursuant to the SSA.

15. Not later than April 2017, Veritable assumed responsibility for properly credentialing Plaintiffs with the various insurance companies that would ultimately pay for the services Plaintiffs provided their clients. Credentialing, along with pre-certification, establishes the terms of the business relationship between Plaintiffs and third-party payers. Proper credentialing and pre-certification are essential to Plaintiffs' business. If Plaintiffs are not properly credentialed and pre-certified with a client's insurance provider at the time Plaintiffs provided services to that client, the insurer will not subsequently pay for any services rendered by Plaintiffs while they were not credentialed.

16. Plaintiffs, in the conduct of their business, relied extensively on Veritable's discharge of its contractual obligations under the SSA. Without a "green light" from Veritable, Plaintiffs would not provide services to prospective clients. That "green light" from Veritable came in the form of Veritable's representations that Plaintiffs were properly credentialed and pre-certified with a prospective client's third-party payer and that the prospective client had coverage for the services Plaintiffs would provide. Unfortunately, Veritable was frequently incorrect when it gave Plaintiffs the green light. Almost from the inception of the SSA, Veritable routinely failed to properly: (1) credential and/or pre-certify Plaintiffs with various insurers, Medicaid, and other third-party payers; (2) conduct benefit verification and insurance eligibility checks; (3) prepare and submit accurate claims for patient services rendered by Plaintiffs. Furthermore, Veritable routinely failed to follow up with respect to denied claims that could have been approved had Veritable properly pursued approval and payment.

17. As a result of these errors, third-party payers often did not pay Plaintiffs for the services they provided their clients. Veritable consistently represented to Plaintiffs that these problems preventing payment were not of their own making and occurred despite Veritable's best efforts. Veritable also consistently represented that it was actively addressing the problems so that Plaintiffs could receive compensation for the services they had already rendered. Unknown to Plaintiffs, these representations were false.

18. In September of 2018, Veritable requested a restructuring of its compensation under the SSA. Per Veritable, it would be economically unfeasible for it to continue providing services under the SSA to Plaintiffs due to the low collections being generated. Accordingly, Plaintiffs (not knowing the falsity of Veritable's above-referenced representations) agreed that Veritable would still be paid a percentage of the payments it collected, but it would be guaranteed a minimum monthly fee of $2,500.00. See email communication attached as Exhibit "B".

19. Despite Veritable's representations that it would remedy the obstacles to collecting payment for the services ADAPT rendered its clients, the uncollected amounts kept mounting. By January of 2019, ADAPT had not received payment for approximately $1,100,000.00 in services it had rendered, and Foundation had not received payment for $800,000.00 in services it had already rendered. Plaintiffs repeatedly informed Veritable of the issues with nonpayment, and Veritable repeatedly represented that the issues were fixable and that Veritable would fix them.

20. Then, on or about January 1, 2019, Angela Opalak, CEO of Veritable, informed Plaintiffs via email that Veritable would be merging with another company operated by an individual named "Yoel." According to Ms. Opalak, Yoel had "many successful years as an entity and it makes more sense to continue the brand under Optimal."[2] Ms. Opalak stated, "Our attorney

---

[2] On information and belief, Yoel Posner formed Optimal on or about August 10, 2016. Sometime thereafter, Optimal's corporate charter lapsed for unknown reasons, and Mr. Posner reinstated it on January 2, 2019.

prepared an amendment which states that as of April 1, 2019, we will be operating under the 'optimal branding.'" In the same email, Ms. Opalak forwarded the Amendment to Mr. Gardzina and closed her email by stating, "We will do great things together and we look forward to continued success with your team as well. We appreciate your continued support!" On information and belief, Veritable's management and other personnel continued working under the "Optimal brand" since the merger. Due to the significant amount of unpaid claims Veritable was purportedly pursuing on Plaintiffs' behalf, Plaintiffs perceived no alternative other than to agree to work with Optimal.

21. On or about January 1, 2019, Veritable, Optimal, and ADAPT executed the Amendment to the SSA. Pursuant to the Amendment, Optimal assumed all of Veritable's duties under the SSA as of April 1, 2019. However, Veritable ostensibly retained all liability in connection with services it rendered pursuant to the SSA prior to April 1, 2019. The Amendment also modified the venue provision of the SSA to state that the exclusive venue for litigation arising under the SSA and Amendment would be in Miami Dade County, Florida and the federal court whose jurisdiction includes Miami Dade County, Florida. Carla Bridges signed the Amendment on behalf of both Veritable and Optimal, and Joe Gardzina signed it on behalf of Plaintiffs. A copy of the Amendment is attached as Exhibit "C".

22. Optimal began performing medical billing services for Plaintiffs pursuant to the SSA and Amendment on or about April 1, 2019. Thereafter, Optimal, like Veritable, routinely failed to properly: (1) credential and/or pre-certify Plaintiffs with third-party payers; (2) conduct benefit verification and insurance eligibility checks; (3) prepare and submit claims for patient services rendered by Plaintiffs; and/or (4) pursue appeals and payment for denied claims. Like Veritable, Optimal also represented that the problems were not of its own making and had occurred

despite Optimal's best efforts. Furthermore, Optimal also represented that it would address the problems so that Plaintiffs could receive compensation for the services they had already rendered.

23. Regrettably, Veritable and Optimal corrected few, if any, of the issues preventing Plaintiffs from receiving payment for services they had rendered. With Plaintiffs' uncollected payments continuing to increase, they ultimately terminated the SSA. At the time ADAPT terminated the SSA, the amount of ADAPT's uncollected payments was approximately $2,300,000.00 and the amount of Foundations' uncollected payments was $1,800,000.00. See termination attached as Exhibit "D".

## CAUSES OF ACTION

24. Paragraphs 1-23, above, are incorporated into each and every cause of action set forth below as if fully set forth therein.

25. As permitted by Rule 8 of the Federal Rules of Civil Procedure, the below-stated causes of action are asserted in the alternative to the extent they are inconsistent.

### Breach of Contract

26. Pursuant to ¶11, 12 and 20 above, Plaintiffs and Defendants entered into a valid contract.

27. Veritable and/or Optimal repeatedly, and materially, breached their obligations under the SSA by (1) failing to properly credential and/or pre-certify Plaintiffs with third-party payers, (2) providing incorrect "benefit verification" and assurance of insurance eligibility, (3) improperly submitting claims for services rendered by Plaintiffs, and/or (5) failing to appeal and/or pursue payment claims for services that Plaintiffs had already provided.

28. Veritable and/or Optimal also breached the SSA by ignoring their respective obligations to use "best efforts" in the discharge of the contractual obligations and to correct errors

in credentialing, pre-certification, benefit verification and insurance eligibility determinations, claims submissions, and payment collections.

29. As a result of Veritable's and/or Optimal's repeated violations of their contractual obligations, Plaintiffs have sustained significant pecuniary losses. Consequently, Plaintiffs sue Veritable and Optimal for breach of contract.

**Negligent Misrepresentation**

30. Veritable and/or Optimal repeatedly, falsely and negligently represented to Plaintiffs that they had properly credentialed and pre-certified Plaintiffs and/or had conducted proper benefit verification and insurance eligibility checks. These representations were material to Plaintiffs. Veritable and/or Optimal knew or should have known that these representations were false when made. Veritable and/or Optimal intended to induce Plaintiffs to rely on these material misrepresentations and continue paying Veritable and/or Optimal for services under the SSA. Plaintiffs justifiably relied on Veritable and/or Optimal's material misrepresentations, undertaking the provision of services to their clients with the reasonable expectation of payment.

31. Veritable and/or Optimal also repeatedly and falsely represented to Plaintiffs that they could and would appeal denied claims and/or correct the problems with the unpaid claims so that Plaintiffs could receive compensation for services already provided. These representations were material to Plaintiffs. Veritable and/or Optimal knew or should have known that these representations were false when made. Veritable and/or Optimal intended to induce Plaintiffs to rely on these material misrepresentations and continue paying Veritable and/or Optimal for services under the SSA. Plaintiffs justifiably relied on Veritable and/or Optimal's material misrepresentations, maintaining their contractual relationship with Veritable and/or Optimal longer than they otherwise would have.

32. Because of Veritable's and/or Optimal's failure to (1) properly credential and/or pre-certify Plaintiffs, (2) conduct proper benefit verification and insurance eligibility checks, and/or (3) appeal denied claims and/or correct the problems with the unpaid claims so that Plaintiffs could receive compensation for services already provided, Plaintiffs have not received payment for many of the services they provided to their patients. Additionally, Plaintiffs continued paying Veritable and/or Optimal thousands of dollars per month for years. Accordingly, Plaintiffs sue Veritable and Optimal for negligent misrepresentation.

### Fraud

33. Veritable represented to Plaintiffs that Optimal had been operating successfully in the medical billing industry for many years. This was meant to induce Plaintiffs into approving and/or signing the Amendment. The representation was false, which Veritable knew, as Optimal had only been in existence for a relatively short amount of time. Given the difficulties Plaintiffs were experiencing with Veritable, the idea that Optimal was an established and experience medical billing company did, in fact, serve as an inducement to Plaintiffs to approve and/or execute the Amendment. Plaintiffs then kept paying the minimum monthly fee to Optimal, while Optimal kept making the same mistakes Veritable made before. As a result of this, Plaintiffs have sustained significant pecuniary harm, including the monthly fees they paid Optimal and many unpaid claims.

### Florida Deceptive and Unfair Trade Practices Act

34. Veritable and/or Optimal engaged in various deceptive and/or unfair practices in conjunction with the SSA and Amendment. Veritable's and Optimal's deceptive and/or unfair trade practices include, but are not limited to:

   a. falsely holding themselves out as competent in the area of medical billing;
   b. falsely representing to Plaintiffs that they had properly credentialed and/or pre-certified Plaintiffs with their clients' third-party payers;

    c. providing incorrect benefit verification and insurance eligibility services to Plaintiffs;

    d. falsely representing that they would use their "best efforts" in the discharge of their responsibilities under the SSA;

    e. falsely representing that if, despite such "best efforts," errors occurred, they would correct the errors;

    f. falsely representing that they would make all reasonable attempts and efforts to determine the status of Plaintiffs' claims, including, but not limited to, phone calls, letters, and/or emails to third parties;

    g. falsely representing that they would respond in a timely fashion to any denial notices, overpayment requests, remarks, disputes, appeals, or requests initiated by an insurer or third party in relation to Plaintiffs' claims;

    h. seeking to transfer all the benefits of the SSA to Optimal while limiting its liability for Veritable's malfeasance in connection with the SSA; and

    i. falsely representing that Optimal was an established, experienced medical billing company.

35. This series of deceptive and unfair trade practices resulted in Plaintiffs paying thousands of dollars to Veritable and/or Optimal pursuant to the SSA while sustaining millions of dollars in damages as a result of their malfeasance in connection with the SSA. Accordingly, Plaintiffs sue Veritable and Optimal under the Florida Deceptive and Unfair Trade Practices Act.

### Breach of Implied Covenant of Good Faith and Fair Dealing

36. Veritable and Optimal were responsible for properly credentialing and pre-certifying Plaintiffs with the insurance providers for their clients, conducting proper benefit verification and insurance eligibility checks, properly preparing and submitting claims for all patient services rendered by Plaintiffs, and/or pursuing appeals for and payment of denied claims. Veritable and Optimal represented in the SSA and Amendment that they would use their "best efforts" in discharging their obligations to Plaintiffs and would correct any errors made in the discharge of their responsibilities under the SSA.

37. Both Veritable and Optimal consciously and deliberately failed to use "best efforts" in connection with their obligations under the SSA or to correct the frequent and numerous errors

in the discharge of their obligations. This failure therefore frustrated the common purpose of the agreement between the parties. Thus, both Veritable and Optimal breached the implied covenant of good faith and fair dealing with Plaintiffs in connection with the SSA. As a result of their respective breaches, Plaintiffs have not received payment for many of the services it provided and that Optimal and/or Veritable were supposed to properly bill and collect for.

## Request for Declaratory Relief

38. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaration by the Court that:

   a. the limitation of liability provisions of the SSA are unenforceable because they are procedurally and substantively unconscionable;
   b. the "Retained Liabilities" clause of the Amendment is unenforceable because it is procedurally and substantively unconscionable; and
   c. the "Limitation of Liability" provision in SSA does not shield Veritable and/or Optimal from liability because they did not use their "best efforts" in the discharge of their obligations under the SSA.

## Successor Liability

39. As noted in ¶ 20 through 22 above, according to Veritable, it entered into a merger with Optimal. Following the merger, many of Veritable's key personnel continued working at Optimal, which, on information and belief, took over all of Veritable's existing business. Moreover, the merger and the Amendment's "retained liabilities" clause are a fraudulent effort by Optimal to continue operating Veritable's business while avoiding its liability. Consequently, in addition to liability for its own conduct, Optimal is liable for Veritable's wrongful conduct because, on information and belief, there was a *de facto* merger between Optimal and Veritable, Optimal is a mere continuation of Veritable, and/or the Amendment is a fraudulent effort to avoid Veritable's liability.

## DAMAGES

40. In connection with Defendants' above-described wrongful conduct and Plaintiffs' above-stated causes of action, Plaintiffs seek actual damages of at least $4,100,000.00.

## ATTORNEY'S FEES

41. Plaintiffs seeks recovery of their reasonable and necessary attorney's fees and costs, as permitted by Fla. Stat. § 501.2105 and Section 10.11 of the SSA.

## DEMAND FOR JURY TRIAL

42. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a trial by jury of any issues so triable by right.

## PRAYER

43. ADAPT Programs, LLC and ADAPT Foundations, Inc. respectfully request that they have judgment against Defendants for:

   a) actual damages;

   b) all costs of expert witnesses and all costs of litigation;

   c) attorneys' fees for prosecution of this case at trial and on appeal;

   d) pre-judgment interest, at the maximum legal rate;

   e) post-judgment interest, at the maximum legal rate; and

   f) all other relief to which Plaintiffs may be entitled, whether at law or in equity.

Respectfully submitted,

THE CHARTWELL LAW OFFICES, LLP

BY: */s/Andrew D. Craven*
    ANDREW D. CRAVEN, ESQUIRE [FBN:  185388]
    acraven@chartwelllaw.com
    THE CHARTWELL LAW OFFICES, LLP
    100 SE 2nd Street, Suite 2150
    Miami, Florida 33131-2332
    Telephone:  (305) 372-9044
    Facsimile:    (305) 372-5044
    ***Attorneys for Plaintiff***